## Baugh *versus* Kirkpatrick.

1. Where a factor made advances to the consignor, on goods sent to him to sell, an attachment by a creditor of the consignor did not arrest the power of the factor to sell, leaving the goods tied up in his hands.

2. By the order to sell and advances made by the factor he acquired an interest in the goods, with a right to sell, which could not be affected by the attachment.

3. The attaching creditor stands upon no higher footing than his debtor in relation to the garnishee, and could not arrest a sale without tendering him his advances.

4. An execution cannot take goods out of a pawnee's possession without tendering him the money for which he holds them in pledge.

January 14th 1867. Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ. STRONG, J., at Nisi Prius.

Error to the District Court of *Philadelphia*.

This was a scire facias in foreign attachment by John P. Baugh and others, trading as Baugh & Sons, against Charles W. Kirkpatrick and others, trading as D. Kirkpatrick & Sons, garnishees of Robert Frame. The writ issued October 9th 1865.

The plaintiffs issued a foreign attachment against Frame, under which his goods, in the hands of the garnishees, were attached June 14th 1865, and they recovered judgment against the defendants for $1226.58.

In answer to interrogatories the garnishees stated, " that, prior to the service of the writ of attachment in this case, Robert Frame, of whom they are garnishees, consigned to them for sale a quantity of leather, particularly described in an annexed account, upon which certain advances were made prior to said attachment being served, which are also stated in said account; that said leather was sold, and a balance received over and above such advances amounting to $823.90."

The account referred to in the answer showed that the goods had been sold by the garnishees, on and after the day of the service of the attachment.

Besides the advances of the garnishees, part of the goods in their hands, to the amount of $321.04, had been assigned by the defendant to a third party before the attachment. At the date of the attachment, and when the goods were sold, they were worth $1260.

The court directed the jury to find the value of the goods at the time of their sale, and also at the time of the trial; reserving the question for which amount judgment should be entered.

On the 25th of May 1866, the jury found what goods were in the hands of the garnishees at the service of the attachment, and that they were " at this date of the value of $1856.03; at the date of sale by garnishees, $1260. And find advances and claims prior to attachment, to the amount of $787.39."

[Baugh v. Kirkpatrick.]

The court gave judgment for the plaintiffs, and " that there are in the hands of the garnishees $472.61," and interest from the day of the service of the attachment.

The plaintiffs took a writ of error, and assigned for error that the court did not enter judgment that there was in the hands of the garnishees $1856.03 less the amount of prior claims.

*J. S. Serrill,* for plaintiff in error.—By the Act of June 13th 1836, § 58, Purd. 494, pl. 19, Pamph. L. 582, the jury is to find what goods were in the garnishees' hands when attached and afterwards, and their value. This means their present value, for otherwise, if they should advance in value, it would be for the profit of the garnishee or debtor.

By section 50 of the same act (Purd. 493, pl. 11), the goods " shall be bound by the writ, and be in the officer's power ;" he shall secure them to abide the judgment of the court ; and the garnishee is called on to show cause why the plaintiff should not have execution of the effects of the defendant in his hands :" Hampton *v.* Matthews, 2 Harris 105; Flanagin *v.* Wetherill, 5 Wh. 280; Layman *v.* Beam, 6 Id. 181.

The control of the garnishee over the goods must therefore be suspended, unless he have antecedent rights, which the attachment cannot override.

The garnishees are either bailees, holding the goods as security, and could not sell without notice to Frame ;—Davis *v.* Funk, 3 Wright 249, Sterns *v.* Marsh, 4 Denio 227, 2 Kent 581.;—or factors to sell, whose control over the goods being no greater than the owner's, ceased as his did when the attachment was served.

It is, beside, against the policy of the law to allow a garnishee to retain control of goods in the custody of the law : Shaw *v.* Levy, 17 S. & R. 99; Pott *v.* Oldwine, 7 Watts 173.

*J. W. Paul,* for defendants in error.—An attaching creditor is in no better position than the debtor : U. S. *v.* Vaughan, 3 Binn. 394 ; and as the debtor sent the goods to be sold, and received advances on them, his creditor could not stop a sale. The advances gave the garnishee a lien which the attachment could not displace : Stevenson *v.* Pemberton, 1 Dall. 3.

The opinion of the court was delivered, February 25th 1867, by AGNEW, J.—This is a foreign attachment. The defendant had consigned to the garnishees a quantity of leather for sale, on which they had made large advances before the attachment was served. It is contended the attachment arrested their power to sell, leaving the goods tied up in their hands. We cannot assent to this. We are bound to take notice of the general usages governing the contracts of factors and commission merchants. By the order to

[Baugh *v.* Kirkpatrick.]

sell and advances made by the factors, an interest was acquired in the goods, with a right to sell which could not be affected by the after-attachment. It would be deleterious to trade, and the rights of those engaged in it, to hold that goods forwarded to a factor to be sold, may be tied up in his hands until the creditor of the consignor is ready to proceed with his execution to convert them. In the management of the business of the present day, when all things move by steam, and time and space are almost annihilated, to compel the factor to store goods consigned to him for sale, would be to impede his business, and fill the room in his warehouse, which the quick movements of trade would devote to the goods of others. The attaching creditor stands upon no higher footing than his debtors in relation to the garnishee. What right would the debtor himself have to say to the garnishee, " you shall not sell," without tendering him his advances and making him whole ? Even an execution cannot be levied of goods in pawn, so as to take them out of the pawnee's possession, without tendering him the money for which he holds them in pledge. So here the garnishees, as factors to sell, having made advancements, had a power coupled with an interest which was irrevocable except upon a tender of their charges. Added to the injury to them by protracted storage, a fall in price might leave their advances partially unprotected. If the plaintiff was desirous to retain the goods for an advance in price it was his duty to furnish the money to relieve them of the lien of the garnishees, and to direct the sheriff to take them into custody. There being no fraud alleged in the sale, the court below was right, and

The judgment is affirmed.