20501.   MODERN ORDER OF PRÆTORIANS *v.*
BLACKBURN.

DECIDED FEBRUARY 17, 1931.   REHEARING DENIED FEBRUARY 27, 1931.

John R. Wilson, H. C. Harrison, Bryan, Middlebrooks & Carter, for plaintiff in error.

J. C. Hale, W. V. Custer & Son, contra.

JENKINS, P. J. (After stating the foregoing facts.) Something might be said in elaboration of the rulings stated in the fourth and fifth headnotes. We recognize the rule, as laid down in *Sovereign Camp Woodmen of the World* v. *Shaw*, 143 *Ga.* 559 (85 S. E. 827), that under the terms of the constitution and by-laws of the defendant fraternal beneficiary association, upon failure of a member to pay monthly dues by the 20th day of any month his suspension automatically resulted, without affirmative or judi-

catory act upon the part of the association issuing the certificate. It is the contention of the defendant that under the evidence in this case a verdict in its favor was demanded on the theory that the last payment of dues made by the decedent was for the month of November, 1925, and, therefore, his suspension automatically resulted from failure to pay dues for the month of December by the 20th day of that month; that thirty days after such automatic suspension his right to reinstatement upon repaying his dues and satisfying the local collector, or worthy recorder, that he had been in continuous good health since the date of lapse, terminated, and that thereafter he could not be reinstated except upon complying with the provision of the constitution of the order requiring the submission of a medical certificate. On the other hand, the plaintiff contends that the payment evidenced by the receipt signed by the collector, Lester, and dated December 5, 1925, covered dues for the months of December, 1925, and January, 1926; that no other dues were payable until February 1, 1926, and the suspension of the insured did not result from any nonpayment of dues until February 20, 1926; that the payment made on behalf of the insured by McDaniel on February 26, 1926, operated to reinstate the insured under the thirty-day clause of the constitution, the dues being accepted by the local collector prior to the accident, and that the insurance was, therefore, in force at the time of the death of the insured.

It is admitted by the secretary at Dallas that the dues for October and November had been paid, but he fails to testify as to when such payments were made. The witness Lester attempts to connect the payment made on December 5 with the dues for October and November, but aside from such testimony by Lester there is no evidence going to indicate that such payment related to the October and November dues, or when the October and November dues were paid. In the absence of anything to the contrary, the jury were authorized to infer that Blackburn made his payments for October and November in regular course, that is, by the 20th day of each month, and such a presumption is not contradicted by the Dallas secretary or by any testimony other than that of Lester. With respect to the date of the last payment of dues made to Lester, after the lapse on February 20, Lester was contradicted by Daniel, who testified positively that the payment made by him on behalf of the

insured was made prior to the automobile accident. There was proof also that after the death of the insured Lester made affidavit to the effect that the last payment of dues was on February 20; this affidavit contradicted Lester's testimony on the trial that such dues were actually paid over to him by McDaniel on March 1, and after the accident to the insured. We think, therefore, that the jury were authorized to find that this witness had been successfully impeached. Civil Code (1910), §§ 5881, 5884.

Eliminating, therefore, the testimony of the witness Lester, there was sufficient proof on behalf of the plaintiff to show payment of dues for the months of December, 1925, and January, 1926, by virtue of the payment made on December 5, 1925, and a subsequent payment for the purpose of reinstatement within the terms of the contract of insurance. Without Lester's testimony, the jury were authorized to infer that the decedent, on December 5, 1925, owed the defendant nothing except the dues which had matured on the first day of that month, and that the payment made on December 5, 1925, evidenced by Lester's receipt, covered dues for the months of December and January, that no further dues became payable until February 1, and the decedent did not fall in arrears until February 20, 1926. The payment thereafter made by McDaniel on the insured's behalf, which, according to the testimony of McDaniel, was made prior to the accident and at a time when there appears to be no dispute that the insured was in good health, was sufficient to cover dues for the current month and for the succeeding month, so as to render the insurance of force on the date of the insured's death. See, in this connection, *Starnes* v. *Atlanta Police Protective Asso.*, 2 *Ga. App.* 237 (58 S. E. 481); *Farmers Mutual Life Asso.* v. *Elliott*, 4 *Ga. App.* 342 (61 S. E. 493); *Farmers Mutual Co-operative Fire Ins. Co.* v. *Kilgore*, 39 *Ga. App.* 528 (148 S. E. 18). Accordingly, the charge of the court dealt with in the 4th headnote was not inapplicable, and the verdict in favor of the plaintiff is authorized by the evidence.

*Judgment affirmed. Stephens and Bell, JJ., concur.*

ON MOTION FOR REHEARING.

JENKINS, P. J. Although the opinion in this case was not delivered by the court until February 17, 1931, as set forth in the motion for rehearing, it had been considered in conference by the court for many weeks before, and all the members of the court

had been giving it long and serious consideration. It is not a case which is plain on its face; but the mouth of the insured is sealed by death, and the testimony of the local agent of the company in which the decedent was insured is contradicted by a previous affidavit. The jury has passed upon the issues of fact, and the trial judge has approved the finding made by them, and it resolves itself into one of those cases where the question is whether this court will set aside the finding of the jury as being without any sort of evidence to support it.

There is no dispute that the decedent was insured by the defendant company. There is no dispute that, including the last payment, all the premiums on the insurance were paid to the local collector of the lodge and ·forwarded to the home office, and that the last premium, subsequently returned, was received by the home office and held by it several weeks. The only disputed question was when the payments were made and what months they represented. As set forth in the original opinion, if we eliminate the testimony of the impeached witness there is nothing which absolutely demands a finding such as is contended for by the insurance company, although the Dallas secretary swore that no dues were paid for November or any month thereafter. This question has been dealt with at length in the original opinion. It is true, as pointed out in the motion for rehearing, that Allen, the defendant's Dallas secretary, did swear that no dues were paid for the insured "after November or for any month thereafter," and stated that, as a consequence thereof, the insurance lapsed finally on December 20th. This is the testimony most strongly relied upon to establish such a lapse as required a medical certificate for reinstatement. But it seems undisputed that Blackburn did make a ˙payment of $4.40 on December 5, 1925, and Lester, the local collector, issued a receipt therefor. This contradicts the testimony of Allen that no dues were paid "after November." Allen further testified, as is pointed out in the motion for rehearing, that Blackburn lapsed in August, "but reinstated properly in September; paid dues for September, October, and November." He does not testify that the insured lapsed in October. If, as contended by counsel for movant, the payment made on December 5, 1925, was to cover the dues of Blackburn for October and November, 1925, and dues for October and November were not paid until then, then there had been a

lapse of the insurance on October 20, and it would have been necessary for Blackburn, at the time of the payment of December 5, to reinstate under the clause requiring a medical certificate. There is no intimation in the testimony of Allen, or elsewhere in the record, that when the December payment was made there had been a previous lapse of the insurance, and that the December payment was made for the purpose of reinstatement under the medical-certificate clause; on the contrary, Allen testified, as just stated, that Blackburn lapsed in August, but reinstated in September, and paid dues for September, October and November. Certainly if Blackburn had been required to reinstate in September on account of the August lapse, the jury would have been authorized to take the view that there was no lapse in October, since there was nothing to indicate that he had been required to reinstate in November or at any other time previous to, or when he made, the December payment. If the October and November payments were not regularly made, Allen's records certainly would have shown the fact, and if the October payment was not made until December 5, as the defendant now contends, it seems that Allen would have testified that the member lapsed in October, just as he did testify that he lapsed in August and was required to reinstate in September. We think, therefore, that the court was fully justified in holding, as it did hold, that, disregarding the testimony of Lester, the jury were authorized to find that the October and November payments were regularly made, and that the payment of December 5 was made when Blackburn owed nothing except the dues accruing on the first day of that month, and that the payment of $4.40 made on that date covered his dues for December, 1925, and January, 1926.

But it is contended by the plaintiff in error, in the motion for rehearing, that the testimony of Boozer, who was a district representative of the defendant company, shows that the payment of December 5 was for October and November dues. It is true that Boozer did testify, as set forth in the motion for rehearing, that "I know positively that this receipt was for October and November dues," but he further stated the source of this information as being a statement made by Lester, and that he based his conclusion on the fact that the week prior to Blackburn's death he tried to get him [Blackburn] to reinstate, and that he received informa-

tion from the home office every month as to the payment of dues by members in his territory. In so far as Boozer's testimony was based on the statement of Lester, it was, of course, mere hearsay, and possessed no probative value. The fact that he was trying to get Blackburn to reinstate just prior to his death, or prior to the automobile accident, indicates nothing but that Blackburn's insurance had lapsed at that time, and it is admitted by the plaintiff that the insurance did lapse on February 20, 1926, for nonpayment of the February dues, it being the contention of the plaintiff, however, that the payment made by McDaniel was for reinstatement under the thirty-day clause. Boozer did not undertake to testify what the records furnished him by the home office showed with reference to when Blackburn's October and November dues were paid, and it does not seem to us, therefore, that his testimony, as explained by himself, in any wise tends to establish the fact that the payment made on December 5, 1925, covered dues for October and November. The jury might have believed that the payment made on December 5 was never remitted to the home office by Lester, and such a theory would be consistent with the testimony of both Allen and Boozer.

Plaintiff in error now contends, for the first time, that under the suit as brought, the plaintiff set forth, and proceeded on the theory, that she had fully complied with the terms and conditions of the policy as respects the filing of proofs of loss, and that, therefore, she was shut into the case as made, and could not, upon the trial, rely upon a waiver of such proofs by an absolute refusal to pay; citing *Liverpool &c. Ins. Co.* v. *Ellington,* 94 *Ga.* 785 (21 S. E. 1006) ; *Hampton* v. *Thomas,* 11 *Ga.* 317 ; *New Zealand Fire Ins. Co.* v. *Brewer,* 29 *Ga. App.* 773 (116 S. E. 922). We recognize the rule laid down by this court in the *Brewer* case, but we do not think it has application here. On the trial of the instant case, it was admitted, both by the pleadings and by the evidence on behalf of the defendant, that there had been a refusal to pay the amount of the policy, and the whole pressure of the trial was around the question whether the policy had lapsed. It was alleged by the petition both that there had been a compliance with the requirements concerning proof of loss and that there had been a refusal to pay the loss, which refusal was admitted by the answer. The ruling of this court which is set forth in the first division of the

syllabus was merely that the objection made to the introduction of the proofs of death in evidence, which was based solely upon the ground that they did not comply with the requirements of the constitution and by-laws of the order, was not good. It was not contended in the assignment of error or in the briefs of counsel that the rule in *New Zealand Fire Ins. Co.* v. *Brewer* had application. Moreover, from the record it appears that the proofs of death actually furnished were on blanks supplied by the defendant company; and since the record discloses that counsel for the defendant, in response to a notice to produce the proofs of death filed, stated that he had "two other blanks which he was unable to produce on account of being misplaced or lost," it could not be said, even if the rule in the *Brewer* case had application, that the beneficiary actually failed to meet the requirements of the policy and the constitution and laws of the order, in submitting proofs of death. While the form actually set forth in the record bore only the signature of Duncan Lester, the worthy recorder, the signatures of the Sublime Augustus and Senior Tribune being omitted, there is nothing to indicate that this deficiency was not supplied by the missing forms which the defendant failed to produce on notice, and, therefore, it does not appear that the proofs actually filed failed to meet the requirements.

In the motion for rehearing there seems to us to be nothing that requires a rehearing of the case, which, as stated, has already had long and serious consideration by all the members of the court, or that requires a holding that the verdict is absolutely and entirely without any sort of evidence to support it.